**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| **CONTRACTOR MANAGING** | § | |
| **GENERAL INSURANCE AGENCY, INC.** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CAUSE NO.: 4:20-cv-00996-O** |
| | § | |
| | § | |
| **GREENLIGHT REINSURANCE, LTD.** | § | |
| | § | |
| **Defendant.** | § | |

<u>**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS
AND BRIEF IN SUPPORT**</u>

Plaintiff, Contractor Managing General Insurance Agency, Inc. ("CMGIA" or the "General Agent), files this Response to Defendant Greenlight Reinsurance, Ltd. ("Greenlight" or the "Reinsurer")'s Motion to Dismiss, and in support thereof respectfully states the following.

## <u>TABLE OF CONTENTS</u>

**Page**

I.     SUMMARY…………………………………………………………………6

II.    FACTS……………………………………………………………………7

III.   LEGAL STANDARD………………………………………………………9

IV.    ARGUMENTS AND AUTHORITIES…………………………………………..10

    A. The *Orix Credit Alliance* Test Does Not Support Dismissal…………………………11

       1.   The Action is Ripe and Justiciable…………………………………………………12

          a.   There is an "actual controversy" due to the existence of a concrete issue with the imminent threat of litigation………………………………………....14

          b.   There are no factual developments necessary………………………………...15

          c.   CMGIA is not seeking a declaration of non-liability for past conduct……….17

       2.   The Court Has Authority to Grant Relief…………………………………………18

       3.   The Court Should Exercise Its Discretion to Decide This Matter………………...19

    B. CMGIA Has Stated a Claim Under the Federal Declaratory Judgment Act………….21

    C. CMGIA Does Not Seek Attorneys' Fees…………………………………………24

V.     PRAYER…………………………………………………………………24

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Adams v. Bain*, 697 F.2d 1213 (4th Cir. 1982) ................................................................ 10

*Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 57 S.Ct. 461, 81 L.Ed. 617 (1937)..................... 18

*Arch Reinsurance Co. v. Underwriters Serv. Agency, Inc.*, No. 02-10-00365-CV, 2012 WL 1432556 (Tex. App. Apr. 26, 2012) ........................................................................ 16

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009). ........................................................................ 10

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .......................................................... 10

*Bell v. Bank of Am. Home Loan Servicing LP*, 4:11-CV-02085, 2012 WL 568755 (S.D. Tex. Feb. 21, 2012) ............................................................................................... 22

*Brillhart v. Excess Insurance Co. of America*, 316 U.S. 491, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942) ......................................................................................................... 19

*Century Sur. Co. v. Foley Prop. Assets, LLC*, A-09-CA-733-SS, 2010 WL 11598127 (W.D. Tex. Apr. 28, 2010) .................................................................................... 14

*CNA Group Life Assurance Co. v. Rhea*, 3:05-CV-0117 P, 2005 WL 8158439 (N.D. Tex. May 20, 2005)........................................................................................... 23

*Collin County, Tex. v. Homeowners Ass'n for Values Essential to Neighborhoods, (HAVEN)*, 915 F.2d 167 (5th Cir. 1990)........................................................................... 17

*Cont'l Ins. Co. v. McKain*, 821 F. Supp. 1084 (E.D. Pa. 1993) .................................... 18

*Davenport v. Rodriguez*, 147 F. Supp. 2d 630 (S.D. Tex. 2001).................................... 11

*Diaz v. Deutsche Bank*, 5:14-CV-121, 2015 WL 12777391 (S.D. Tex. Apr. 14, 2015) .............. 23

*Evans v. B.F. Perkins Co., a Div. of Standex Int'l Corp.*, 166 F.3d 642 (4th Cir. 1999) .............. 9

*Garcia v. Bank of New York Mellon*, 3:12-CV-0062-D, 2012 WL 692099 (N.D. Tex. Mar. 5, 2012).............................................................................................. 18

*Hardware Mut. Cas. Co. v. Schantz*, 178 F.2d 779 (5th Cir. 1949) ............................ 22

*Harris County Tex. v. MERSCORP Inc.*, 791 F.3d 545 (5th Cir. 2015)................................ 22, 23

*Hillwood Development Co., L.L.C. v. Related Companies, Inc.*, Case No. 3:04-CV-1100-L, 2006 WL 1140472 (N.D. Tex. Apr. 28, 2006) ............................................................... 12, 13, 14, 15

*Holloway v. Pagan River Dockside Seafood, Inc.*, 669 F.3d 448 (4th Cir. 2012). ........................ 9

*Icarom, PLC v. Howard County, Md.*, 904 F. Supp. 454 (D. Md. 1995) ..................................... 17

*Ironshore Specialty Ins. Co. v. Tractor Supply Co.*, 624 Fed. Appx. 159 (5th Cir. 2015) .......... 19

*Jones v. HCA*, 16 F. Supp. 3d 622 (E.D. Va. 2014) .................................................................... 10

*Kougl v. Xspedius Mgmt. Co. of Dallas/Fort Worth, L.L.C.*, CIV.A.3:04CV2518-D, 2005 WL 1421446 (N.D. Tex. June 1, 2005) ............................................................................................ 23

*Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 61 S.Ct. 510, 85 L.Ed. 826 (1941) ......................................................................................................................................... 12

*Mayflower Transit, L.L.C. v. Troutt*, 332 F. Supp. 2d 971 (W.D. Tex. 2004) ....................... 12, 19

*Middle South Energy, Inc. v. City of New Orleans,* 800 F.2d 488 (5th Cir.1986) ....................... 12

*Millenium Petrochemicals, Inc. v. Brown & Root Holdings, Inc.*, 390 F.3d 336 (5th Cir. 2004) ................................................................................................................................................ 15, 16

*Mobil Oil Corp. v. Oil, Chem. & Atomic Workers Intern. Union, AFL-CIO*, 483 F.2d 603 (5th Cir. 1973) .................................................................................................................................... 12

*Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. CBI Indus., Inc.*, 907 S.W.2d 517 (Tex. 1995) ... 16

*Orix Credit Alliance, Inc. v. Wolfe*, 212 F.3d 891 (5th Cir.2000) .............................. 11, 12, 13, 18

*Public Affairs Assocs., Inc. v. Rickover,* 369 U.S. 111, 82 S.Ct. 580, 7 L.Ed.2d 604 (1962). 11, 21

*R & P Enterprises v. LaGuarta, Gavrel & Kirk, Inc.*, 596 S.W.2d 517 (Tex.1980) .................... 16

*Redwood Resort Properties, LLC v. Holmes Co. Ltd.*, CIV.A.3:06CV1022-D, 2007 WL 1266060 (N.D. Tex. Apr. 30, 2007) .......................................................................................................... 22

*S. Jackson & Son, Inc. v. Coffee, Sugar, & Cocoa Exchange, Inc.,* 24 F.3d 427 (2d Cir.1994) .. 12

*Sherwin-Williams Co. v. Holmes County*, 343 F.3d 383 (5th Cir. 2003) ..................... 11, 14, 19, 20

*Shields v. Norton*, 289 F.3d 832 (5th Cir.) ................................................................................... 14

*Shoney's, Inc. v. Schoenbaum*, 686 F. Supp. 554 (E.D. Va. 1988) .............................................. 17

*Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 70 S. Ct. 876, 94 L. Ed. 1194 (1950) ... 22

*St. Paul Ins. Co. v. Trejo*, 39 F.3d 585 (5th Cir.1994) ................................................ 20, 21, 23, 25

*St. Tammany Parish, ex rel. Davis v. Fed. Emergency Mgmt. Agency*, 556 F.3d 307 (5th Cir. 2009) ......................................................................................................................................... 10

*Sun Oil Co. (Delaware) v. Madeley,* 626 S.W.2d 726 (Tex.1981) ................................................ 16

*Tex. Employers' Ins. Ass'n v. Jackson*, 862 F.2d 491 (5th Cir. 1988) ..................................... 13, 14

*Tex. Health & Human Services Comm'n v. United States*, 166 F. Supp. 3d 706 (N.D. Tex. 2016) ......................................................................................................................................... 23

*Tex. Med. Ass'n v. Aetna Life Ins. Co.*, 80 F.3d 153 (5th Cir. 1996) ........................................... 23

*Texas v. West Publ'g. Co.,* 882 F.2d 171 (5th Cir.1989) ............................................................ 12

*Torch, Inc. v. LeBlanc,* 947 F.2d 193 (5th Cir.1991) .................................................................. 21

*Travelers Ins. Co. v. Louisiana Farm Bureau Federation, Inc.*, 996 F.2d 774 (5th Cir.1993) .... 20

*Travelers Insurance Co. v. Davis,* 490 F.2d 536 (3rd Cir.1974) ................................................. 17

*WFG Nat'l Title Ins. Co. v. Peniel Holdings, LLC*, 3:16-CV-2366-G, 2016 WL 7117252 (N.D. Tex. Dec. 6, 2016) ................................................................................................... 13, 14, 15

*Wilton v. Seven Falls Co.*, 41 F.3d 934 (5th Cir. 1994) .............................................................. 11

*Wilton v. Seven Falls Co.,* 515 U.S. 277, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995) ........ 11, 19, 21

**Statutes**

28 U.S.C. § 2201 ................................................................................................................ 12, 21

28 U.S.C. § 2283 ...................................................................................................................... 19

Texas Practice Remedies Code § 38.002 ................................................................................... 15

# I.
## SUMMARY

1.      CMGIA is currently facing a six-figure demand for an alleged breach of a contract provision that, since April 1, 2015, no longer exists.

2.      Either way this Courts decides the issue of whether Greenlight can rely on a deleted contract provision to support its claimed damages will bring CMGIA what it has been seeking for over the past two years: finality.

3.      For over the past two years, CMGIA has repeatedly provided its position to Greenlight in writing. The first response seemingly ended the dispute. A year later, Greenlight re-raised the same issue, albeit without any legal authority for its demand for return commissions. CMGIA responded, in writing, with its same position. Having received no response, CMGIA followed back up with Greenlight *nine months later* to confirm it could close its files. Greenlight then notified CMGIA that it disagreed with CMGIA's interpretation of the contract and that it would respond "as soon as practicable."

4.      Twenty-seven months after receiving its first demand for payment, CMGIA filed this suit, curiously labeled by Greenlight as both a "race to the courthouse" and "preemptive strike."

5.      Greenlight asks this Court—despite a pending Section 38.002 demand to CMGIA—to dismiss this action on the basis that the action is not ripe.[1] If the Court dismisses this case, CMGIA is left with uncertainty, attorneys' fees, and mounting interest. However, if the Court

---

[1] CMGIA is left in an unusual position of explaining to this Court, by October 2, 2020, why an "actual controversy" exists and by October 5, 2020, responding to Greenlight's formal presentment of its claim for the "return of commissions owed under the Agreement from 2015 through 2018." CMGIA has filed an Amended Complaint as permitted by Rule 15 of the Federal Rules of Civil Procedure, incorporating this demand.

denies Greenlight's Motion to Dismiss (the "Motion"), both Parties will finally have resolution, one way or the other, to the near-annual dispute that hangs over CMGIA.

6.      CMGIA has waited years for resolution, and justice demands that it should not continue to wait, with the specter of this litigation looming over its head. Greenlight asks the Court to make CMGIA wait even longer, only so it may file the same action with the same facts on the same issue before this same Court. Greenlight's Motion should be denied. There can be no more delay.

## II.
## FACTS

7.      CMGIA, Greenlight, and State National Insurance Company, Inc., an entity not a party to this litigation, entered into a Quota Share Reinsurance Agreement (the "Agreement") on April 1, 2012.[2]. The parties later agreed to Amendments No. 4 and No. 5 (collectively, "the Amendments"), retroactively effective as of April 1, 2015.[3] The Amendments redrafted parts of the Agreement concerning the commission structure and "claw backs." By the terms of the Amendments, the original paragraphs in the Agreement were "replaced in [their] entirety" by the amended text.[4] Greenlight terminated the Agreement on June 17, 2016.[5]

8.      Despite the effective dates of the Amendments, on June 19, 2018, Greenlight demanded a return of a portion of the commissions previously paid, citing to the calculations provided in the *since-removed* language of the Agreement.[6] Through counsel, CMGIA responded, informing Greenlight that it was citing to a contractual provision that was no longer in effect.[7]

---

[2] *See* Plaintiff's First Amended Complaint [Dkt. 7], ¶10 and its Exhibit 1.
[3] *Id.* at ¶12 and its Exhibit 2.
[4] *Id.* at ¶12-14 and its Exhibit 2.
[5] *Id.* at ¶15 and its Exhibit 3.
[6] *Id.* at ¶16.
[7] *Id.* at ¶16.

Upon receipt of CMGIA's response, Greenlight notified CMGIA that Greenlight would let CMGIA know if a call was required to further discuss. For the next year, CMGIA received no further demands or correspondence on this issue.[8]

9.      In July of 2019, Greenlight reached back out to CMGIA "to pick up the discussions." CMGIA again responded, in writing, with its position that Greenlight may not rely on a contract provision that was removed by amendment to support its return commissions. Without providing any legal authority for the basis of its demand, the Reinsurer re-raised the issue and reasserted its demand for "claw back" of commissions on September 24, 2019 and October 17, 2019.[9]

10.     CMGIA again reiterated its position that the since-removed language from the Agreement by the Amendments no longer applied. Greenlight made no response and for the next nine months, and CMGIA received no further demands or correspondence during this issue.[10]

11.     Having received no written response, in July of 2020, counsel for CMGIA wrote counsel for Greenlight to confirm that it could close its files. Greenlight responded that it disagreed with CMGIA's interpretation of the contract and that it would "provide [CMGIA] with our position as soon as practicable."[11]

12.     After over two years of unsupported demands followed by months of silence, CMGIA filed suit the 96th Texas District Court of Tarrant County seeking a declaration of the Parties' rights and obligations under the Contract. In response, Greenlight, through its counsel,

---

[8] *Id.* at ¶16.
[9] *Id.* at ¶17.
[10] *Id.* at ¶18.
[11] *Id.* at ¶19.

sent CMGIA a written demand for the entirety of the "claw back" commissions in accordance with Texas Practice and Remedies Code Section 38.002 on September 4, 2020.[12]

13.     Greenlight removed this action to federal court on September 4, 2020.[13] Subsequently, Greenlight filed its Motion pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, alleging no "actual controversy" exists and that the case should be dismissed for a lack of subject-matter jurisdiction.[14]

14.     To the extent that CMGIA did not plead the necessary *federal* jurisdictional facts to establish subject matter jurisdiction in its state court petition filed under Texas law, CMGIA files its First Amended Complaint (the "Amended Complaint") concurrent with this Response as authorized by Rule 15 of the Federal Rules of Civil Procedure to plead the proper jurisdictional facts, remove its request for attorneys' fees, and to specifically plead the Federal Declaratory Judgment Act as its cause of action for relief.[15]

### III.
### LEGAL STANDARD

15.     A motion to dismiss a complaint for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P 12(b)(1) "addresses whether [the plaintiff] has a right to be in the district court at all and whether the court has the power to hear and dispose of [the plaintiff's] claim." *Holloway v. Pagan River Dockside Seafood, Inc.*, 669 F.3d 448, 452 (4th Cir. 2012). A court should grant such a motion "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Evans v. B.F. Perkins Co., a Div. of Standex Int'l Corp.*, 166 F.3d 642, 647 (4th Cir. 1999).

---

[12] *Id.* at ¶20 and its Exhibit 5.
[13] *See* Greenlight's Notice of Removal [Dkt. 1].
[14] Defendant's Motion to Dismiss [Dkt. 6].
[15] See Plaintiff's First Amended Complaint [Dkt. 7].

16.     A motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), on the other hand, "tests the legal sufficiency of a complaint." *Jones v. HCA*, 16 F. Supp. 3d 622, 628 (E.D. Va. 2014). To survive such a motion, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "[A] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

17.     A court considering either type of motion assumes that the facts alleged in the complaint are true and views the complaint in the light most favorable to the plaintiff.  *Jones*, 16 F. Supp. 3d at 628; *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). Greenlight's Motion alleges a lack of subject-matter jurisdiction. The court may look beyond the four corners of the complaint and consider undisputed facts evidenced in the record when those facts are relevant to determine whether the court has jurisdiction. *St. Tammany Parish, ex rel. Davis v. Fed. Emergency Mgmt. Agency*, 556 F.3d 307, 315 (5th Cir. 2009).

**IV.**
**ARGUMENTS AND AUTHORITIES**

There is a three-step inquiry to determine whether this Court should grant Greenlight's Motion: (1) whether the declaratory action is justiciable; (2) whether the Court has the authority to grant declaratory relief in the case presented; and (3) determining how to exercise the Court's broad discretion to decide or dismiss the action. The dispute between the parties has been ongoing for over two years, and the issues are ripe. There is no competing action which would bar this action under the Anti-Injunction Act. Finally, the factors of federalism, fairness, and judicial efficiency all favor the Court exercising its discretion to exercise its jurisdiction in this matter. There is no statutory bar to the declaratory action and thus no need to find an independent cause

of action, as Greenlight alleges. For the reasons set forth herein, CMGIA asks the Court to deny Greenlight's Motion.

18.     Due to the removal of this action from state court, CMGIA has replead its facts in its Amended Complaint. *See* Fed. R. Civ. P. 15. To the extent that the alleged defects raised in a motion to dismiss remain in the Amended Complaint, a court should apply the motion to that live pleading. *Davenport v. Rodriguez*, 147 F. Supp. 2d 630, 635 (S.D. Tex. 2001).

19.     The Federal Declaratory Judgment Act states: "In a case of actual controversy within its jurisdiction, ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." *See* 28 U.S.C. § 2201. The Declaratory Judgment Act is "an authorization, not a command." *Public Affairs Assocs., Inc. v. Rickover,* 369 U.S. 111, 112, 82 S.Ct. 580, 7 L.Ed.2d 604 (1962). The district court has broad discretion to grant declaratory judgment. *Wilton v. Seven Falls Co.*, 41 F.3d 934, 935 (5th Cir. 1994), aff'd, 515 U.S. 277, 115 S. Ct. 2137, 132 L. Ed. 2d 214 (1995). "Since its inception, the Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.,* 515 U.S. 277, 286, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995).

## A.     The *Orix Credit Alliance* Test Does Not Support Dismissal

20.     In analyzing whether to decide or dismiss a declaratory judgment suit, the district court follows a three-step test. *Orix Credit Alliance, Inc. v. Wolfe*, 212 F.3d 891, 895 (5th Cir.2000). A federal district court must determine: (1) whether the declaratory action is justiciable; (2) whether the court has the authority to grant declaratory relief; and (3) whether to exercise its discretion to decide or dismiss the action. *Sherwin-Williams Co. v. Holmes County*, 343 F.3d 383,

387 (5th Cir. 2003). These factors all support that the Court retain its jurisdiction to decide this action, as discussed below.

### 1. The Action is Ripe and Justiciable

21.     "A declaratory judgment action is ripe for adjudication only where an 'actual controversy' exists." *See* 28 U.S.C. § 2201(a); *Texas v. West Publ'g. Co.,* 882 F.2d 171, 175 (5th Cir.1989); *Orix Credit Alliance,* 212 F.3d at 896. As a general rule, an actual controversy exists where "a substantial controversy of sufficient immediacy and reality" exists between parties having adverse legal interests." *Middle South Energy, Inc. v. City of New Orleans,* 800 F.2d 488, 490 (5th Cir.1986). Simply put, "in order to achieve the status of a case or controversy, a dispute must exist between two parties having adverse legal interests." *S. Jackson & Son, Inc. v. Coffee, Sugar, & Cocoa Exchange, Inc.,* 24 F.3d 427, 431 (2d Cir.1994). "Whether particular facts are sufficiently immediate to establish an actual controversy is a question that must be addressed on a case-by-case basis." *Mayflower Transit, L.L.C. v. Troutt,* 332 F. Supp. 2d 971, 977–78 (W.D. Tex. 2004). "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Mobil Oil Corp. v. Oil, Chem. & Atomic Workers Intern. Union, AFL-CIO,* 483 F.2d 603, 607–08 (5th Cir. 1973), on reh'g, 504 F.2d 272 (5th Cir. 1974), rev'd, 426 U.S. 407, 96 S. Ct. 2140, 48 L. Ed. 2d 736 (1976) quoting *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941).

22.     Greenlight relies primarily upon *Hillwood Development* to support the proposition that a "threat of litigation, if specific and concrete, *can indeed* establish a controversy upon which declaratory judgment can be based." *Hillwood Development Co., L.L.C. v. Related Companies,*

*Inc.*, Case No. 3:04-CV-1100-L, 2006 WL 1140472, at *5 (N.D. Tex. Apr. 28, 2006) (citing *Orix Credit Alliance*, 212 F.3d at 897) (emphasis added). However, the purpose of the court's inquiry is to ensure that the threatened suit has "taken on final shape so that the court can see what legal issues it is deciding." *WFG Nat'l Title Ins. Co. v. Peniel Holdings, LLC*, 3:16-CV-2366-G, 2016 WL 7117252, at *2–3 (N.D. Tex. Dec. 6, 2016) quoting *Hillwood Development Co.*, 2006 WL 1140472, at *5.

23.     The issues have taken full shape: the only issue before the Court is the effect of Amendments Nos. 4 and 5 on the interpretation of the "claw back" provision of the Agreement. The parties had that the Amendments were "effective as of April 1, 2015" Thus, any potential breach of contract rests upon the interpretation of the Amendments and their effect on the now non-existent "claw back" provision. Greenlight refuses to admit that its rights to the "claw back" commissions terminated with the incorporation of the Amendments and has renewed its demand for payments.[16]

24.     This is the exact situation contemplated by the framers of the Federal Declaratory Judgment Act, as with the enactment of that statute the courts would no longer have to tell "the prospective victim that the only way to determine whether the suspect is a mushroom or a toadstool, is to eat it." *Tex. Employers' Ins. Ass'n v. Jackson*, 862 F.2d 491, 505 (5th Cir. 1988). The Fifth Circuit further stated that:

> One of the main purposes of the Federal Declaratory Judgment Act was to provide a means to grant litigants judicial relief from legal uncertainty in situations that had not developed sufficiently to authorize traditional coercive relief. Litigants would no longer be put to the Hobson's choice of foregoing their rights or acting at their peril; nor, if they had already acted, would they be forced to wait, for perhaps many years, until the statute of limitations expired, to know whether they had been subjected to some significant liability.

---

[16] *See* Plaintiff's First Amended Complaint [Dkt. 7], ¶21 and its Exhibit 5.

*Id.* at 505. Without court intervention, CMGIA is at the mercy of unending demands for past payments from Greenlight, waiting for them to accrue potential damages under its competing and erroneous interpretation of the Amendments.

25.     If this is a race to the courthouse as Greenlight alleges, then it is the slowest race to the courthouse in judicial history.

### a. There is an "actual controversy" due to the existence of a concrete issue with the imminent threat of litigation.

26.     By repeatedly citing the *Hillwood Development* case a dozen times, Greenlight gives its argument the veneer of more judicial support than it actually has. The court does not require the case be on the precipice of litigation, defeating the stated intent of the Federal Declaratory Judgment Act to avoid just such a Hobson's Choice. *Jackson*, 862 F.2d 491 at 505. As the Fifth Circuit has stated, "We look to the practical likelihood that a controversy will become real." *Shields v. Norton*, 289 F.3d 832, 835 (5th Cir.). *Hillwood Development* stands for the proposition that the threat of litigation can indeed establish a controversy, not that such a threat is a requirement. *Hillwood Development Co.*, 2006 WL 1140472, at *5. In *Peniel Holdings*, the district court held there was a justiciable controversy despite the lack of "any specific threats showing that litigation is imminent." *WFG Nat'l Title Ins. Co. v. Peniel Holdings, LLC*, 3:16-CV-2366-G, 2016 WL 7117252, at *2–3 (N.D. Tex. Dec. 6, 2016). The district court in *Foley Prop. Assets* further clarified that there is no requirement of a specific threat of litigation: "A proper purpose of section 2201(a) is to allow potential defendants to resolve a dispute without waiting to be sued or until the statute of limitations expires." *Century Sur. Co. v. Foley Prop. Assets, LLC*, A-09-CA-733-SS, 2010 WL 11598127, at *4 (W.D. Tex. Apr. 28, 2010) quoting *Sherwin–Williams*, 343 F.3d at 397.

27.     The requirement is that there be a concrete issue with an imminent threat of litigation, not a specific one. *Peniel Holdings, LLC*, 2016 WL 7117252, at *3. In this case, the only issue is the effect of the Amendments on the interpretation of the claw back provisions. Greenlight complains that CMGIA is able to summarize the dispute in two sentences, but this further demonstrates how simple and concrete the issues are before the Court.

28.     Greenlight has since threatened escalation and followed through on the threat by sending a demand letter for payment of the claw back commissions under Texas Practice Remedies Code § 38.002, a necessary step to recover attorney's fees in litigation on a breach of contract suit.[17] Even if there is a requirement of a specific threat of litigation, as alleged by Greenlight, its demand for a specific dollar sum referencing the code to collect attorney's fees in litigation certainly qualifies. By its own admission via Greenlight's specific threat of litigation, this controversy is ripe.

### b.  There are no factual developments necessary.

29.     Greenlight again relies on *Hillwood Development*, this time for the proposition that "further factual development would be necessary before the court could seriously contemplate making the declarations Plaintiffs request." *Hillwood Development Co.*, 2006 WL 1140472, at *8. What Greenlight cannot point to is any factual developments necessary *in this case*.

30.     "Texas courts have made clear that rights or obligations that may have vested or accrued under previous versions of a contract can only be modified or extinguished through the inclusion of express language that manifests such intent." *Millenium Petrochemicals, Inc. v. Brown & Root Holdings, Inc.*, 390 F.3d 336, 342 (5th Cir. 2004). Greenlight asserts that "Plaintiff does not allege any such language in the Agreement or amendments."[18] This is false. CMGIA

---

[17] *See* Plaintiff's First Amended Complaint [Dkt. 7], ¶21 and its Exhibit 5.
[18] Defendant's Motion to Dismiss [Dkt. 6], ¶19.

specifically points to the language in the Amendments that the original paragraph "is replaced in its entirety with the following" and that the Amendments are effective "as of April 1, 2015."[19] The Agreement and the Amendments are both exhibits to the Original Petition.[20] There is no need for further discovery to determine the specific language of a contract and its amendments which is already in the record of the court. The language is unambiguous.

31.     Parol evidence is not admissible for the purpose of creating an ambiguity. *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995). Only where a contract is first determined to be ambiguous may the courts consider the parties' interpretation. *Sun Oil Co. (Delaware) v. Madeley,* 626 S.W.2d 726, 732 (Tex.1981). The court may then admit extraneous evidence to determine the true meaning of the instrument. *R & P Enterprises v. LaGuarta, Gavrel & Kirk, Inc.,* 596 S.W.2d 517, 518 (Tex.1980).

32.     CMGIA asks the Court for declaratory judgment on the interpretation of unambiguous terms in the contract under Texas law. *Arch Reinsurance Co. v. Underwriters Serv. Agency, Inc.*, No. 02-10-00365-CV, 2012 WL 1432556, at *9–10 (Tex. App. Apr. 26, 2012), review granted, judgment vacated, and remanded by agreement (May 31, 2013). *Millennium Petrochemicals, Inc. v. Brown & Root Holdings, Inc.*, 390 F.3d 336, 342 (5th Cir. 2004). Greenlight claims the need for discovery about its conduct so it may develop inadmissible parol evidence to determine the interpretation of unambiguous terms for the claim to be justiciable. This parol evidence has no effect on the interpretation of the language of the Agreement and does not prevent the Court from exercising its subject matter jurisdiction on this ripe dispute.

---

[19] Defendant's Motion to Dismiss [Dkt. 6], Exhibit 1, ¶¶13-14 and its Exhibit 1.
[20] Defendant's Motion to Dismiss [Dkt. 6], Exhibits 1 and 2.

**c. CMGIA is not seeking a declaration of non-liability for past conduct.**

33.     The Declaratory Judgment Act is designed to afford parties, threatened with liability, but otherwise without a satisfactory remedy, an early adjudication of an actual controversy. *Collin County, Tex. v. Homeowners Ass'n for Values Essential to Neighborhoods, (HAVEN)*, 915 F.2d 167, 170 (5th Cir. 1990). The purpose of a declaratory judgment is to avoid the accrual of damages which possibly could be avoided by one who is not certain of the full nature of his rights and to allow him a forum to adjudicate such rights instead of waiting for his adversary to file suit. *Shoney's, Inc. v. Schoenbaum*, 686 F. Supp. 554, 564–65 (E.D. Va. 1988), aff'd, 894 F.2d 92 (4th Cir. 1990). It allows the parties to prevent violations of their rights by clarifying their legal relationships. *Travelers Insurance Co. v. Davis,* 490 F.2d 536, 543 (3rd Cir.1974). The early resolution of the controversy helps the parties avoid damages that might otherwise accrue. *Collin County, Tex. v. Homeowners Ass'n for Values Essential to Neighborhoods, (HAVEN)*, 915 F.2d 167, 172 (5th Cir. 1990).

34.     Greenlight attempts to turn this logic on its head. It asserts that CMGIA has no monetary damages, so it cannot clarify the rights of the parties. The case law clearly demonstrates that the purpose of declaratory judgment is not to quantify plaintiff's damages, but instead that **any** of the parties can avoid damages that might accrue. The purpose is to allow the plaintiff to limit the damages that the defendant may later claim due to the unsure nature of the parties' rights. *Shoney's, Inc.*, 686 F. Supp. 554 at 565 (The court had subject matter jurisdiction due to plaintiffs "asking the court to determine their liability under section 1114, i.e., what can the defendants recover from them for a possible infringement under section 1114."); *Icarom, PLC v. Howard County, Md.*, 904 F. Supp. 454, 457–58 (D. Md. 1995) (The parties disagreement on whether a pollution exclusion clause was part of the contract was part of the contract is a justiciable

controversy); *Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 57 S.Ct. 461, 81 L.Ed. 617 (1937) (When there is a concrete case admitting of an immediate and definite determination of the legal rights of the parties, declaratory judgment is appropriate although it may not require payment of damages); *Cont'l Ins. Co. v. McKain*, 821 F. Supp. 1084, 1089 (E.D. Pa. 1993), aff'd, 19 F.3d 642 (3d Cir. 1994) ("it will serve a useful purpose to clarify the legal relations of the insurers now, while this court has the case before it; the clarification could preclude the need for trial in the underlying cases"). Greenlight's example is inapplicable as the plaintiff in *Garcia* did not seek a mere clarification of legal rights, but a recission of the contract and a declaration fee simple resided in plaintiffs. *Garcia v. Bank of New York Mellon*, 3:12-CV-0062-D, 2012 WL 692099, at *4 (N.D. Tex. Mar. 5, 2012).

35.     CMGIA is not seeking rescission or reformation of the contract. It is not seeking for a remedy to any alleged past wrong. It is seeking a declaration regarding the interpretation of the Amendments removing the claw back provisions in the Agreement.

36.     Furthermore, any potential damages are unchanging. Greenlight terminated the contract on June 17, 2016, meaning the last claw back period has already expired, and any alleged commissions are already due. There are no future hypothetical damages to consider as the contract has been terminated and no further relationship between the parties. The claim is past ripe, and CMGIA asks the Court to determine the legal rights of the parties.

**2.  The Court Has Authority to Grant Relief**

37.     Under the second element of the *Orix Credit Alliance* test, a district court does not have authority to consider the merits of a declaratory judgment action when: (1) the declaratory defendant previously filed a cause of action in state court; (2) the state case involved the same issues as those in federal court; and (3) the district court is prohibited from enjoining the state

proceedings under 28 U.S.C. § 2283. *Sherwin-Williams*, 343 F.3d at 388 n. 1 (citations omitted). This second step requires the Court to assess whether competing state and federal proceedings exist, and whether the district court is prohibited from intruding in the state action under the Anti-Injunction Act. *Mayflower Transit, L.L.C. v. Troutt*, 332 F. Supp. 2d 971, 978 (W.D. Tex. 2004).

38.   There is no other court action pending in state or federal court. The Anti-Injunction Act is not at issue in this matter.

### 3.   The Court Should Exercise Its Discretion to Decide This Matter

39.   The Supreme Court has held that the discretionary standard of *Brillhart v. Excess Insurance Co. of America*, 316 U.S. 491, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942), rather than a more stringent test, governs a district court's decision to hear a declaratory judgment action. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 289–90, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995). Although each circuit applies a slightly different formulation of the *Brillhart* test, "each circuit's formulation addresses the same three aspects of the analysis": "the proper allocation of decision-making between state and federal courts"; fairness; and efficiency. *Ironshore Specialty Ins. Co. v. Tractor Supply Co.*, 624 Fed. Appx. 159, 164 (5th Cir. 2015).

40.   The Fifth Circuit has stated that, when determining whether to exercise or decline jurisdiction over a declaratory judgment action, a district court should consider seven factors, namely: (1) whether a state action is pending in which all of the matters in controversy may be fully litigated; (2) whether the plaintiff filed the declaratory action suit in anticipation of a suit by the defendant; (3) whether the plaintiff engaged in forum shopping in bringing the suit; (4) whether possible inequities exist by allowing the declaratory plaintiff to gain precedence in time or to change forums; (5) whether the federal court is convenient for the parties and witnesses; (6) whether retaining the case in federal court will serve judicial economy; and (7) whether the federal

court is being called on to construe a state judicial decree involving the same parties and entered by the court before whom the parallel state suit between the same parties is pending. *St. Paul Ins. Co. v. Trejo*, 39 F.3d 585 (5th Cir.1994). A district court's failure to consider or balance these relevant factors constitutes an abuse of discretion. *Travelers Ins. Co. v. Louisiana Farm Bureau Federation, Inc.*, 996 F.2d 774, 778 (5th Cir.1993).

41.     The Fifth Circuit has analyzed the factors set forth in *Trejo* and divided them into three different categories: (1) factors relating to federalism and comity (which include the first and seventh *Trejo* factors); (2) factors relating to fairness (which include the second, third, and fourth *Trejo* factors); and (3) factors relating to efficiency (which include the fifth and sixth *Trejo* factors). *Sherwin-Williams*, 343 F.3d at 390-91.

42.     The factors related to federalism favor exercising jurisdiction. There is no state court action pending nor is the federal court being asked to construe a state judicial decree. This is a dispute of the terms of a contract between private parties.

43.     The fairness factors also all point to exercising jurisdiction. CMGIA did not file this action in anticipation of litigation, but due to the imminent threat of litigation at some uncertain date. CMGIA is not engaged in forum shopping, as it filed suit in state court and it was Greenlight who removed this action on diversity grounds, actively choosing the federal forum. There is no inequity in time in allowing this suit to go forward, as Greenlight is currently demanding a sum certain in its Section 38.002 litigation demand to CMGIA. Dismissing this case would do harm to CMGIA as it would be returned to the position of endlessly waiting for Greenlight to file it suit and determine the rights of the parties, on the same issue that is before the Court now: the interpretation of the Amendments.

44.     Finally, the efficiency factors all favor exercising jurisdiction as well. Greenlight selected the federal forum and cannot now complain of the inconvenience of their own choosing. Most importantly, the judicial economy factors most favor CMGIA. If this Court declines to exercise its discretionary jurisdiction, Greenlight simply files suit for breach of contract in this exact court at some future date. That case will hinge entirely on the interpretation and legal effect of the Amendments removing the "claw back" provision of the Agreement. The entire case for breach of contract hinges on this dispute in interpretation. A dismissal merely delays the same exact proceeding in this same court, just on a later date.

45.     Greenlight has made no showing in its Motion regarding the *Trejo* factors, which are required for a court to consider in a motion to dismiss regrading the Declaratory Judgment Act. This Court has the discretionary authority under the Act under all seven factors, and Greenlight has presented no authority to the contrary.

**B.     CMGIA Has Stated a Claim Under the Federal Declaratory Judgment Act**

46.     The Federal Declaratory Judgment Act states: "In a case of actual controversy within its jurisdiction, ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. Federal courts have broad discretion to grant or refuse declaratory judgment. *Torch, Inc. v. LeBlanc,* 947 F.2d 193, 194 (5th Cir.1991). "Since its inception, the Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.,* 515 U.S. 277, 286, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995). The Declaratory Judgment Act is "an authorization, not a command." *Public Affairs Assocs., Inc. v. Rickover,* 369 U.S. 111, 112, 82 S.Ct. 580, 7 L.Ed.2d 604 (1962). It gives federal courts the

competence to declare rights but does not impose a duty to do so. *Redwood Resort Properties, LLC v. Holmes Co. Ltd.*, CIV.A.3:06CV1022-D, 2007 WL 1266060, at *4 (N.D. Tex. Apr. 30, 2007).

47. The purpose of the Declaratory Judgment Act is to settle "actual controversies" before they ripen into violations of law or a breach of some contractual duty. *Hardware Mut. Cas. Co. v. Schantz*, 178 F.2d 779, 780 (5th Cir. 1949). The Declaratory Judgment Act allows relief to be given by way of recognizing the plaintiff's right even though no immediate enforcement of it was asked. *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671–72, 70 S. Ct. 876, 879, 94 L. Ed. 1194 (1950) (Denying jurisdiction under federal question jurisdiction but granting jurisdiction to the declaratory judgment on state law when sitting in diversity). The Declaratory Judgment Act is a procedural device that creates no substantive rights; rather, it requires the existence of a justiciable controversy. *Bell v. Bank of Am. Home Loan Servicing LP*, 4:11-CV-02085, 2012 WL 568755, at *8 (S.D. Tex. Feb. 21, 2012). The above sections A.1-3. of this Response establishes the existence of just such a controversy

48. Greenlight demands that CMGIA establish a private cause of action, but such a cause of action exists: breach of contract. CMGIA is before the Court for a declaration of rights under contract to avoid the accrual of damages for an alleged brief, the exact purpose of a declaratory judgment action regarding breach of contract. The *MERSCORP* case upon which Greenlight relies did not create a cause of action under the specific statute the plaintiffs wanted relief under. *Harris County Tex. v. MERSCORP Inc.*, 791 F.3d 545, 552 (5th Cir. 2015). This is further explained by the Fifth Circuit, when it refused to hear a case on "contract rights" not because it cannot hear a declaratory judgment action based upon breach of contract, but because the terms regarded interpretation of the Texas Administration Code in regards to rights against

medical providers, and the section of the code did not provide for a private cause of action. *Tex. Med. Ass'n v. Aetna Life Ins. Co.*, 80 F.3d 153, 158 (5th Cir. 1996).

49.     The other cases Greenlight cites are also inapplicable. To support the proposition that there must be a private cause of action, it cites cases in which the district court dismissed a declaratory judgment action to determine the interpretation of statutes which gave no such private cause of action. *Diaz v. Deutsche Bank*, 5:14-CV-121, 2015 WL 12777391, at *9 (S.D. Tex. Apr. 14, 2015), report and recommendation adopted, 5:14-CV-121, 2015 WL 12777392 (S.D. Tex. Sept. 10, 2015), aff'd, 667 Fed. Appx. 468 (5th Cir. 2016) (Dismissal not due to the lack of a cause of action, but because "no present controversy exists."); *Tex. Health & Human Services Comm'n v. United States*, 166 F. Supp. 3d 706, 712 (N.D. Tex. 2016) (Dismissed "[b]ecause neither the Refugee Act nor the APA creates a cause of action for the Commission to compel advance consultation"); *Harris County Tex. v. MERSCORP Inc.*, 791 F.3d 545, 552 (5th Cir. 2015) (section 192.007 itself did not create a private right of action).

50.     Further, the *Kougl* court did not dismiss the declaratory judgment action because it lacked jurisdiction due the lack of a cause of action, but that it declined to exercise its discretionary jurisdiction after applying the *Trejo* factors. *Kougl v. Xspedius Mgmt. Co. of Dallas/Fort Worth, L.L.C.*, CIV.A.3:04CV2518-D, 2005 WL 1421446, at *4 (N.D. Tex. June 1, 2005). In that case, the plaintiffs asserted a breach of contract in the same action and the court declined to extend jurisdiction because those "questions will be resolved in the context of breach of contract actions" already before the court at the same time. *Id.* at *4. This is unlike the matter at hand, in which there is no other breach of contract action before the court, and the *Trejo* factors overwhelmingly support the Court exercising its discretionary jurisdiction. *Rhea*, the other case cited by Greenlight, suffers from the same deficiency. *CNA Group Life Assurance Co. v. Rhea*, 3:05-CV-0117 P, 2005 WL

8158439, at \*2 (N.D. Tex. May 20, 2005) ("Texas state courts and federal courts applying Texas law dismiss a declaratory judgment action filed pursuant to the Texas Declaratory Judgment Act when such action only raises issues already before the court"). Even if CMGIA had an additional breach of contract claim before the court, rendering these cases applicable, the cases still concern the court's discretionary jurisdiction under *Trejo*, not an absolute bar.

51.     Breach of contract is recognizable cause of action under Texas law, and this Court has jurisdiction under the Federal Declaratory Act to determine the rights of the parties in an actual controversy regarding the parties' private contractual rights.

**C.     CMGIA Does Not Seek Attorneys' Fees**

52.     As this action was converted to one under federal procedural law, attorney's fees cannot be granted under federal law. CMGIA has since filed its Amended Complaint under the Federal Declaratory Judgment Act, and it will not pursue attorneys' fees. The Amended Complaint renders Greenlight's Motion on this issue moot.

## V.
## PRAYER

For the foregoing reasons, Plaintiff Contractor Managing General Insurance Agency, Inc. requests this Court deny Greenlight Reinsurance, Ltd.'s Motion to Dismiss in its entirety and to other such and further relief the Plaintiff is entitled.

Respectfully submitted,

KREBS FARLEY & DRY, PLLC

By:  _/s/ Ryan D. Dry_
    Ryan D. Dry
    Bar No. 24050532
    909 18th Street
    Plano, Texas 75074
    (972) 737-2517 Telephone
    (972) 737-2543 Facsimile
    rdry@krebsfarley.com

**CONTRACTOR MANAGING GENERAL INSURANCE AGENCY, INC.**

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing document was served in accordance with the Federal Rules of Civil Procedure upon all counsel of record through the Court's Electronic Filing System on this the 2nd day of October, 2020.

    _/s/ Ryan D. Dry_
    Ryan D. Dry