IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| CONTRACTOR MANAGING GENERAL INSURANCE AGENCY, INC., | § § § § | |
| *Plaintiff*, | § | |
| v. | § | CIVIL ACTION NO. 4:20-cv-00996-O |
| | § § | |
| GREENLIGHT REINSURANCE, LTD., | § § | |
| *Defendant*. | § | |

**DEFENDANT GREENLIGHT REINSURANCE, LTD.'S
COMBINED MOTION TO DISMISS FIRST AMENDED COMPLAINT AND
REPLY IN SUPPORT OF ITS ORIGINAL MOTION TO DISMISS**

Defendant Greenlight Reinsurance, Ltd. ("Greenlight") files its Combined Motion to Dismiss Plaintiff's First Amended Complaint and Reply in Support of its Original Motion to Dismiss [ECF Nos. 6 & 6-1] pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, and 28 U.S.C. § 2201.[1]

**I.
SUMMARY OF REPLY ARGUMENTS**

1. Greenlight never contemplated, discussed, or threatened litigation against CMGIA. Greenlight has never alleged a "race to the courthouse." Rather, Greenlight asserts that while it sought to resolve Plaintiff's conduct without the need for litigation, it was met with a preemptive lawsuit despite the lack of an "actual controversy" as that term is defined by courts.

---

[1] Plaintiff filed a First Amended Complaint [ECF No. 7] in connection with its Response to Greenlight's Motion to Dismiss [ECF No. 9]. Purely out of an abundance of caution, concurrently with this Reply, Greenlight files this Motion to Dismiss as to Plaintiff's First Amended Complaint. Except as specifically noted herein, Plaintiff's amended allegations do not require Greenlight to alter the arguments made in its original Motion to Dismiss [ECF Nos. 6 & 6-1], and Greenlight asserts that the Court should still dismiss Plaintiff's First Amended Complaint for each of the reasons set forth in Greenlight's original Motion to Dismiss, which Greenlight incorporates by reference in this Motion to Dismiss First Amended Complaint as if set forth fully herein.

2.     Specifically, presumably unhappy with Greenlight's refusal to yield to Plaintiff's behavior, Plaintiff represented through counsel it would be "closing its files," and then did the exact opposite—filing suit without telling Greenlight about it. Any way trial courts within this District have defined the "actual controversy" requirement, Plaintiff fails to meet the standard. At base, Plaintiff preemptively filed a lawsuit to ratchet up pressure on Greenlight. That is not the purpose of the Declaratory Judgment Act.

3.     Further, the Agreement does not make any reference to what Plaintiff characterizes as "claw back" payments. Rather, the unambiguous language of the Agreement establishes that the "provisional" commissions Greenlight "allowed" Plaintiff were and are at all times subject to adjustment, and the payment of return commissions following those adjustments. As set forth in Greenlight's original Motion and also herein, Plaintiff's theory of its case requires the Court to read an ambiguity into the Agreement, which will then require fact discovery before the Court will be able to entertain Plaintiff's request for declaratory relief. For these reasons, Plaintiff's declaratory judgment action should be dismissed in its entirety.

## II.
## ARGUMENTS AND AUTHORITIES

4.     The Agreement's effective date is April 1, 2012. The Addendum's effective date is April 1, **_2015_**. The Addendum does not contain any language suggesting it should affect commissions allwed "back to inception," as is Plaintiff's legal theory in this case. Instead, the Addendum, by its own terms, focuses upon "the *two-year period **beginning 4/1/2015**, and for each two-year period *thereafter*."[2]

---

[2] *Pl's 1st Am. Comp.* at Exh. 2 [ECF No. 7-2, PageID 179] (emphasis added).

5.      Thus, from April 1, 2012 to April 1, 2015 (and beyond), the Agreement unambiguously requires Plaintiff to cede to Greenlight all premiums collected on all insurance policies subject to the Agreement. On those premiums ceded between 2012 and 2015—the relevant time period in question—Plaintiff was "allowed" provisional commissions, which were and are at all times subject to adjustments for which Plaintiff then owed return commissions to Greenlight.

6.      Plaintiff seeks declarations that ignore the language of the Agreement and the Addendum. Plaintiff argues that the terms of the Addendum, although "effective" only as of April 1, 2015, should apply "retroactively" to deprive Greenlight its contractual right to return commissions on ceded premiums before April 1, 2015. In this manner, Plaintiff seeks to inject what is, at best, an ambiguity between the terms of the Agreement and the Addendum, and to do so Plaintiff must argue inconsistent positions.

**A.    Under Plaintiff's Theory of Its Case, Factual Development Prevents Efficient Declaratory Relief.**

1.      By way of additional, relevant background, as set forth within the additional materials submitted by Plaintiff with its First Amended Complaint, the Agreement generally concerns two categories of insurance policies for which premiums and/or return commissions are owed to Greenlight: (1) General Liability policies; and (2) Surety policies.[3] The primary dispute in this case involves Plaintiff's treatment of the first category: General Liability premiums and associated return commissions.

2.      Specifically to Plaintiff's theory, the "provisional" commissions Plaintiff was "allowed" on General Liability premiums were at all times subject to adjustment—at least

---

[3] *Pl's 1st Am. Comp.* at Exh. 1, ¶ 1.02 [ECF No. 7-1, PageID 155].

according to the Agreement.[4] The Addendum was later executed to adjust commissions allowed for future <u>Surety</u> policies sold and, as Plaintiff observes, removes a commission structure for General Liability premiums collected <u>after</u> April 1, 2015—the effective date of the Addendum:

| Agreement[5] | Addendum No. 4[6] |
|---|---|
| "[Greenlight] shall allow [Plaintiff] a commission of forty-three and one-half percent (43.5%) on all <u>***Surety premiums***</u> ceded to [Greenlight] hereunder and a provision [sic] commission of thirty-three and one-half percent (33.5%) on all <u>***General Liability premiums***</u> ceded to [Greenlight] hereunder." | "[Greenlight] shall allow [Plaintiff] a commission of forty-seven and one-half percent (47.5%) on all <u>***Surety premiums***</u> ceded to [Greenlight] hereunder." |

3.   The reason for the Addendum was simple. As of April 1, 2015, the effective date of the Addendum, Plaintiff no longer sold General Liability policies, and therefore a discussion of future premiums, commissions, and adjustments on General Liability policies was unnecessary.[7] If anything, the Addendum removed Plaintiff's right to <u>any</u> commissions <u>at all</u> on any General Liability premiums collected <u>after</u> April 1, 2015, but there is no language anywhere in the Agreement suggesting the Addendum has any impact on <u>prior</u> agreement years, much less to General Liability premiums collected in prior agreement years.

---

[4] *Pl's 1st Am. Comp.* at Exh. 1 ¶ 8.01 [ECF No. 7-1, PageID 161] ("the Reinsurer is entitled to one hundred percent (100%) of the Net Premiums (as hereinafter defined) received by [Plaintiff]" less "the commission paid to [Plaintiff]").

[5] *Id.* at ¶ 8.05 [ECF No. 7-1, PageID 162].

[6] *Id.* [ECF No. 7-2, PageID 179].

[7] *See id.* at Exh. 5 [ECF No. 7-5, PageID 193] ("CMGIA later ceased selling General Liability policies, and thus the Agreement was eventually amended to remove references to commissions on General Liability premiums.").

4. Thus, Plaintiff must try to carefully argue opposite sides of this issue:

- On the one hand, Plaintiff argues the language it likes—the allowance for a 33.5% provisional commission on General Liability premiums—should remain in full effect since inception of the Agreement despite its absence within the Addendum. Otherwise, removal of that language "back to inception" of the Agreement means Plaintiff owes Greenlight in excess of $3 million in premiums.

- On the other hand, Plaintiff argues the language it doesn't like—the required adjustments to those same provisional commissions—should be eliminated "retroactively" to the inception of the Agreement. Despite the fact that the Addendum is limited in time to April 1, 2015 and after.

This is also despite the fact that, by its own terms, the Addendum only took effect three years <u>after</u> the inception of the Agreement, applies only to Surety premiums, and expressly applies only to "the *two-year period beginning 4/1/2015*, and for each two-year period *thereafter*."[8]

5. In stark contrast to Plaintiff's arguments, Greenlight's consistent position has been that the Agreement and the Addendum are clear, and that Plaintiff can't have it both ways.

6. In this manner, Plaintiff—not Greenlight—is attempting to inject an ambiguity so that Plaintiff can later explain why it should be able to keep money it has always been required to pay to Greenlight.

7. Greenlight understands Plaintiff desires to defend against a potential breach of contract claim, and will try to argue the Agreement is "unambiguous" in its favor. However, Greenlight's position is that Plaintiff can't use a preemptive "declaratory judgment" filing to do so. The cases Plaintiff cites undercut Plaintiff's theory, and weigh against permitting Plaintiff to gain what it perceived as a procedural advantage by filing a preemptive declaratory judgment suit. Again, the *Millenium Petrochemicals* case Plaintiff cites largely mirrors Greenlight's positions:

---

[8] *Pl's 1st Am. Comp.* at Exh. 2 [ECF No. 7-2, PageID 179] (emphasis added).

> "The absence of any language expressly indicating that the [amendment] was to apply to [pre-amendment] periods, and the inclusion of language making the [amendment] retroactively effective [to a specific date] *strongly indicates that the parties intended the amendment to apply **prospectively***….
>
> [T]he only **reasonable** *interpretation* of the Contract is that the parties intended the effective date to delineate the periods [to which the clauses applied], an interpretation which would give effect to *all the clauses* in the contract."

*Millenium Petrochemicals, Inc. v. Brown & Root Holdings, Inc.*, 390 F.3d 336, 342–43 (5th Cir. 2004) (emphasis added).

8. This is largely Greenlight's point—the Addendum did not alter, remove, or excuse Plaintiff's contractual duty to calculate and pay return commissions on <u>previous</u> General Liability premiums ceded <u>before</u> the Addendum in <u>prior</u> agreement years. If anything, any prospective General Liability premiums ceded to Greenlight during the "two-year period" <u>following</u> execution of the Addendum arguably could be subject to some new formula. Plaintiff just doesn't like that "reasonable" result because Plaintiff didn't sell General Liability policies any more, and thus didn't collect or cede any General Liability premiums.

9. Though the case is distinguishable on several grounds,[9] at best, Plaintiff's arguments in this case raise the exact type of ambiguity noted in the *Arch Reinsurance* case Plaintiff also relies upon—whether or not the Parties intended that an amendment arguably providing a "new" formula for calculating ceded premiums applies retroactively to prior agreement years. *Arch Reinsurance Co. v. Underwriters Service Agency, Inc.*, Case No. 02-10-00365-cv,

---

[9] In *Arch Reinsurance*, the amendment in question explicitly applied to "*all liabilities* that are applicable to [the reinsurance agreement]," and then set out a formula by which "all liabilities" for "any particular agreement year," as the court summarized, were to be "capped." 2012 WL 1432556, at *9–10 (emphasis added; brackets in original). There is no "new formula" in the Addendum at issue that could be applied to any prior "agreement year." Rather, by its own terms, the amended Paragraph 8.06 in this case applies prospectively to premiums collected during "the two-year period beginning 4/1/2015," and does not mention or even arguably suggest it should apply to General Liability premiums ceded during any prior "agreement year."

2012 WL 1432556, at *10 & n.20 (Tex. App.—Fort Worth, April 26, 2012) (noting "if a contract is ambiguous, *the intentions of the parties becomes a fact question for the jury*" (emphasis added); citing *Phila. Am. Life Ins. Co. v. Turner*, 131 S.W.3d 576, 588 (Tex. App.—Fort Worth 2004, no pet.)). Therefore, among other fact issues, a full trial was necessary to determine whether the reinsurer intended to "excuse" the underwriter's liability for return commissions for each <u>prior</u> agreement year. *Id.*

10. Though Greenlight asserts it would be entitled to a judgment based upon either (1) a reasonable interpretation of the entire Agreement, or (2) considering the facts and circumstances surrounding the execution of the Addendum; under Plaintiff's own theory of the case, the Parties will need to address the same types of ambiguities in the second scenario. Where a case will require further factual development before the court may contemplate the declaratory relief requested, courts have declined to permit "declaratory judgment" proceedings. *Hillwood Development Co., L.L.C. v. Related Companies, Inc.*, Case No. 3:04-CV-1100-L, 2006 WL 1140472, at *7 (N.D. Tex. Apr. 28, 2006) (Lindsay, J.) (citing *Nat'l Park Hosp. Ass'n v. Dept. of the Interior*, 538 U.S. 803, 811 (2003)). Therefore, Plaintiff's attempt to seek declaratory relief is not proper.

**B.    Plaintiff Still Failed to Plausibly Allege an "Actual Controversy" that Supports Declaratory Relief in Its First Amended Complaint.**

11. The Declaratory Judgment Act requires "a case of actual controversy" for a dispute to be justiciable, and for a trial court to have subject matter jurisdiction. 28 U.S.C. § 2201; *Orix Credit Alliance, Inc. v. Wolfe*, 212 F.3d 891, 895 (5th Cir. 2000) (noting inquiry into justiciability "[t]ypically … becomes a question of whether an 'actual controversy' exists").

12. Among numerous other authorities outlined in its Motion, Greenlight cited to Judge Lindsay's discussion in *Hillwood* addressing this "actual controversy" requirement. Plaintiff cites to Judge Fish's discussion in *WFG Nat'l Title Ins. Co. v. Peniel Holdings, LLC*, 3:16-CV-2366-G, 2016 WL 7117252 (N.D. Tex. Dec. 6, 2016) (Fish, J.). Both cases stand for the proposition that Plaintiff has not plausibly alleged an "actual controversy."

13. The *Hillwood* opinion explained the type of "threat" that gives rise to an "actual controversy"—"something along the lines that [Plaintiff's] position left [Greenlight] no alternative but to pursue a lawsuit…." *Hillwood Development Co., L.L.C. v. Related Companies, Inc.*, Case No. 3:04-CV-1100-L, 2006 WL 1140472, at *6 n.7 (N.D. Tex. Apr. 28, 2006) (Lindsay, J.). Plaintiff cannot plausibly allege any such threat in this case, because there was none.

14. Plaintiff cites to *Peniel*, where the court noted that in addition to "previous demand letters sent by the defendants," courts may also "look to the conduct" of the parties to determine whether an "actual controversy" exists. *WFG Nat'l Title Ins. Co. v. Peniel Holdings, LLC*, Case No. 3:16-CV-2366-, 2016 WL 7117252, at *2 (N.D. Tex. Dec. 6, 2016) (Fish, J.). In the *Peniel* lawsuit, like in *Hillwood*, the defendant's "demand letter lack[ed] any specific threats showing that litigation [wa]s imminent." *Steelplan, Ltd.*, 2016 WL 7117252, at *3. Thus, the trial court examined the defendant's conduct, and an "actual controversy" was found in *Peniel* because the defendant took affirmative steps to set aside an automatic stay in related state court proceedings that were already pending so that it could then initiate litigation against the plaintiff. Again, no such conduct exists in this case.

15. At base, CMGIA filed a "declaratory judgment" to prevent Greenlight from suing before Greenlight ever contemplated doing so. One way or another, Plaintiff's strategy is improper.

16.   Further, even if Greenlight must assert a breach of contract counterclaim, Plaintiff's requested "declaratory" relief is 100% duplicative of Plaintiff's contractual defenses and Greenlight's potential claims for relief. *CAN Group Life Assurance Co. v. Rhea*, Case No. 2005 WL 8158439, 2005 WL 8158439, at *2 (N.D. Tex. May 20, 2005) (Solis, J.); *Kougl v. Xspedius Management Co. of Dallas/Fort Worth, L.L.C.*, Case No. Civ.A. 3:04-cv-2518-D, 2005 WL 1421446, at *4 (N.D. Tex. June 1, 2005) (Fitzwater, J.).

17.   Similar to its other positions outlined above, Plaintiff also argues from opposite sides of the issue on whether an "actual controversy" exists.

- On the one hand, Plaintiff argues a brewing "controversy" was so "imminent" that Greenlight's only next step was to file suit.

- On the other hand, Plaintiff decries what it describes as "the slowest race to the courthouse in judicial history" which lacked any "immediacy" whatsoever. *Pl's Resp.* at 14, ¶ 25 [ECF No. 9].

18.   Plaintiff cannot plausibly allege an imminent "threat" of litigation where Plaintiff's best argument is that the Parties had been involved in ongoing discussions for, according to Plaintiff's estimates, "twenty-seven months" without any threat of litigation. *Id.* at 6, ¶ 4.

19.   Briefly, in response to Greenlight's Motion to Dismiss, Plaintiff amended its Complaint to attach a letter Greenlight provided to Plaintiff's litigation counsel at Plaintiff's insistence. To be clear—Plaintiff demanded Greenlight provide this "formal" response to Plaintiff's letter sent eleven (11) months prior—against Greenlight's desired course of action,[10] and while Greenlight was still trying to reach an amicable resolution. Thus, it can't be plausibly

---

[10] *Pl's 1st Am. Comp.* at Exh. 5 [ECF No. 7-5, PageID 193] ("Though Greenlight has attempted to engage in good faith discussions, CMGIA demanded a 'formal' response to your letter dated October 3, **_2019_**") (emphasis added).

alleged or argued that Greenlight "has since threatened escalation and followed through on the threat"[11]—any alleged "threat" (there was none) was sent at the insistence of Plaintiff.

## III.
## PRAYER

For the foregoing reasons, Defendant Greenlight Reinsurance, Ltd. respectfully requests this Court dismiss Plaintiff's claim for declaratory judgment and request for attorney's fees, and for all further relief to which Greenlight may be justly entitled, at law or inequity.

Dated: October 16, 2020                                  NORTON ROSE FULBRIGHT U.S. LLP


    /s/ *John R. Herring*
       John R. Herring
       State Bar No. 24065410
       john.herring@nortonrosefulbright.com

2200 Ross Avenue, Suite 3600
Dallas, TX  75201-7932
Telephone:     (214) 855-8000
Facsimile:      (214) 855-8200

*Counsel for Defendant Greenlight Reinsurance, Ltd.*

## CERTIFICATE OF SERVICE

I hereby certify that on the 16th day of October, 2020, a copy of this document has been served upon all counsel of record electronically through the Court's Electronic Filing System on those Parties that have consented to such service.


    */s/ John R. Herring*
       John R. Herring

---

[11] *Pl's Resp.* at 15, ¶ 28 [ECF No. 9].